COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

UNPUBLISHED

MEREISA CLEVELAND McDANIEL

v.      Record No. 1341-20-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEREISA CLEVELAND McDANIEL

v.      Record No. 1342-20-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION*
PER CURIAM
JULY 20, 2021

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

(A. Hunter Jackson; Evans Oliver, PLC, on brief), for appellant.
Appellant submitting on brief.

(Sheila K. Paladino, Assistant County Attorney; Danita S. Alt,
Guardian *ad litem* for the minor children, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Mereisa Cleveland McDaniel (father) appeals the circuit court's orders terminating his

parental rights to his two children, M.N.M. and M.C.M.  Father argues that the circuit court erred in

terminating his parental rights under Code § 16.1-283(C)(2) because he had substantially remedied

the conditions that led to or required the continuation of the children's placement in foster care.

Father further asserts that the circuit court erred in terminating his parental rights under Code

§ 16.1-283(E)(i) because termination was not in the children's best interests.  Upon reviewing the

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father's parental rights to two older children had been involuntarily terminated in 2010, and father "didn't want anything to do with those kids then." The Harrisonburg Rockingham Social Services District (HRSSD) had provided two years of extensive services to father before that termination.

Father is the biological father to M.N.M., a five-year-old minor child, and M.C.M., a four-year-old minor child.[2] On May 3, 2017, HRSSD petitioned the Rockingham County Juvenile and Domestic Relations District Court (the JDR court) for protective orders on behalf of M.N.M. and M.C.M. HRSSD alleged that the children were at risk of being abused or neglected because of domestic violence between the parents, the condition of the home, and the biological mother's mental health. HRSSD's safety plan removed the biological mother from father's home. The JDR

---

[1] The record in these cases was sealed. Nevertheless, these appeals necessitate unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Anne Cornett is the biological mother of M.N.M. and M.C.M., but not father's two older children. The Rockingham County Juvenile and Domestic Relations District Court terminated Cornett's parental rights. Cornett did not appeal.

court granted HRSSD's request and subsequently entered multiple protective orders between June 2017 and February 2018 requiring father to cooperate with services.

Beginning in the summer of 2017 through July 2018, HRSSD provided parent education services in father's home to prevent the children's removal from his care. Father was supposed to be the primary caretaker of the children, but because of his work schedule and refusal to cooperate with services, he instead had five different caregivers for the children. Father often impeded the meeting schedule with the parent educator with various appointments and his work schedule. Father felt that HRSSD was out to get him, and it was difficult to redirect him to the children's needs.

HRSSD was concerned about the condition of the home where father and the children lived. On June 25, 2018, HRSSD visited the home and found mouse feces "on just about any surface you would look at," which stuck on the children's hands and feet. Before anyone could intervene, M.C.M. put his feces-covered hand in his mouth. HRSSD directed father to get mousetraps and sterilize the home.

HRSSD returned to the home on July 11, 2018 and found that the conditions had worsened. Mouse feces were still everywhere, including near the children's toothbrushes, on the kitchen counters, and on the children's toys. The children's bedroom also smelled of urine and spoiled milk, causing the social worker to gag when he entered the room. The sheet of the pack-n-play, where M.C.M. slept, had fused to the pad beneath it because it had not been cleaned. Father refused to accept any responsibility for the condition of the home.

On July 13, 2018, the JDR court entered emergency removal orders removing the children from father's care. The JDR court subsequently adjudicated that the children were abused or neglected and entered dispositional orders.

HRSSD offered father supervised visitation while the children were in foster care. Father did not respond well to the feedback HRSSD provided about the visits, and he often stated that "men parent differently than women." Father also focused on how he had been wronged by the children's mother and unfairly treated, rather than on his parenting skills or the children's needs. The parent educator was rehired in April 2019 to conduct supervised visits between father and the children and to provide parenting education to father. The parent educator directed father to choose different developmental skills to work on with the children during visits; father told the parent educator this was new to him and he needed more practice, despite having worked with HRSSD for two years. Father did well with visits in structured environments, but during visits in the community, there were concerns for the children's safety and father's ability to manage both children. At one visit, M.C.M. ran into the road while father was distracted with M.N.M. HRSSD was also concerned with father's physical health, especially during visits, because his obesity made it difficult for him to keep up with the children. Father was often dripping in sweat shortly after a visit began and could not get up and down from the floor to play with the children.

During parent education meetings or other communications with service providers, father did not ask about the children or how they were doing. Father initially refused to provide budget or income information because father felt it was not anyone's business, but eventually completed a budget with his counselor. After February 2020, father had no contact with the children or HRSSD.

On February 19, 2020, the JDR court approved a foster care plan with the permanent goal of adoption and entered orders terminating father's parental rights. Father appealed the JDR court's rulings to the circuit court.

On August 28, 2020, the parties appeared before the circuit court. HRSSD presented evidence that the children had medical and behavioral concerns when entering foster care, but at the

time of the circuit court hearing, the children "were thriving, very healthy." The children had become attached to their foster parents.

Father acknowledged that the circuit court previously had terminated his parental rights to his two older children. He explained that at the time, he did not want to be the primary caregiver for his older children, yet he wanted to be involved in the lives of M.N.M. and M.C.M. Father, however, continued to blame others for the children's removal and admitted to refusing to cooperate with HRSSD. Father testified that he had not contacted HRSSD about the children since the JDR court terminated his parental rights because he did not trust HRSSD and did not "want to deal with it."

After hearing the evidence and arguments, the circuit court took the matter under advisement and issued a letter opinion. The circuit court found that certain factors existed that supported the termination of father's parental rights. Those factors included father's lack of ability to effectively parent, father's refusal to acknowledge any responsibility in the living conditions of his home, father's lack of accountability for the circumstances, and father's inability to parent independently without HRSSD's assistance.

The circuit court found that the children had been in foster care for over twenty-five months and "not a single thing ha[d] changed." The circuit court further found that father's parental rights to two older children previously had been involuntarily terminated. The circuit court found that the termination of father's parental rights was in the children's best interests and terminated father's rights under Code § 16.1-283(C)(2) and (E)(i). These appeals followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018)

- 5 -

(quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that the circuit court erred in terminating his parental rights under Code § 16.1-283(E)(i). He contends that it was not in the children's best interests to terminate his parental rights because he was in fair health, he had stable housing, he visited with the children, he resolved the mouse feces issue, and the children were healthy.

A parent's parental rights may be terminated "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ." Code § 16.1-283(E)(i). Here, HRSSD presented evidence that father's parental rights to two older children, who are the siblings to M.N.M. and M.C.M., were involuntarily terminated in 2010.

Moreover, the circuit court found that termination of father's parental rights to M.N.M. and M.C.M. was in their best interests. "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)). The circuit court considered that the children had been in foster care for over twenty-five months, and HRSSD previously had provided father with prevention services for thirteen months. The circuit court found that none of the circumstances had changed, despite these services. The children were not attached to

father, and he had not attempted to contact them or find out how they were doing since HRSSD changed the foster care goal to adoption.

Although HRSSD provided services to father, he had no ability to effectively parent the children, and still placed blame on the children's biological mother because he felt she should have maintained the home and she was unemployed. Father had not accepted any responsibility for his situation or the home's condition. The circuit court found that no evidence indicated father could parent independently, "instead, the evidence *overwhelmingly* shows that he cannot."

At the time of the circuit court hearing, nothing had changed except the condition of the children. The children were thriving in foster care; the circuit court found that M.N.M.'s improvement in foster care was "dramatic" and M.C.M. was "doing great." The foster home provided a safe and structured environment for the children. The circuit court found that the children deserved permanency and finality. Despite all the services aimed at returning the children to father's home, father was still not ready to have the children returned to his care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Accordingly, the circuit court did not err in finding that it was in the best interests of M.N.M. and M.C.M. to terminate father's parental rights under Code § 16.1-283(E)(i).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of

Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection).  Therefore, we do not need to consider whether the circuit court erred in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.